NOT FOR PUBLICATION

# In the
# United States Court of Appeals
# For the Eleventh Circuit

_____

No. 24-11302
Non-Argument Calendar
_____

ALBERT LEE ST. CLAIR, JR.,

          *Plaintiff-Appellee,*

versus

MAYOR OF LAKELAND, FLORIDA, et al.,

          *Defendants,*

DEANGELO M. ANTHONY,
DEREK R. GULLEDGE,
ERIC STROM,
AARON PETERMAN,
ZACHARY MORGAN SIMMONS, et al.,

          *Defendants-Appellants.*

| 2 | Opinion of the Court | 24-11302 |

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cv-00168-WFJ-UAM

Before LUCK, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

Begin typing here.  Albert St. Clair stole a truck in Lakeland, Florida and led the city's police officers on a dangerous high-speed chase.  When the stolen truck was disabled, St. Clair took off running on foot, only to be brought down by a canine and a swarm of officers.  St. Clair later sued seven of those officers—DeAngelo Anthony, Derek Gulledge, Aaron Peterman, Zachary Simmons, Eric Strom, Justin King, and Nicholas Rex—alleging, among other things, that they used excessive force when they arrested him.

The officers moved for summary judgment based on qualified immunity, but the district court denied their motion as it related to St. Clair's excessive force claims.  The officers appeal, arguing that the district court erred in denying them qualified immunity on the excessive force claims.  After careful consideration, we affirm.

## FACTUAL BACKGROUND

Like the district court, we consider the evidence in the light most favorable to St. Clair.  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

Case 8:21-cv-00168-WFJ-AAS   Document 135   Filed 09/02/25   Page 3 of 17 PageID 1144
USCA11 Case: 24-11302   Document: 25   Date Filed: 09/02/2025   Page: 3 of 15

24-11302                Opinion of the Court                3

In April 2019, St. Clair discovered an unoccupied City of Lakeland pickup truck attached to a trailer full of lawncare equipment. The truck was running, and St. Clair hopped in and took it for a ride. After driving around for a few hours, St. Clair eventually found himself tailed by several Lakeland Police cruisers with their lights flashing. Rather than pulling over, St. Clair sped up, and led the officers on a fourteen-minute chase.

During the hectic pursuit, St. Clair drove into oncoming traffic, blew through traffic signals, knocked over a trashcan, and hit a median. At one point, St. Clair tried to "intimidate" an officer by recklessly driving straight at the officer's vehicle. Eventually, the pursuing officers managed to deflate the tires of St. Clair's truck with "stop sticks." The truck rolled to a stop atop an overpass bridge. Rather than surrendering, St. Clair jumped out of the stolen truck and took off running. Officer Peterman released a police dog to chase after him. St. Clair made it about thirty feet before he was brought down, either by the police dog (which latched onto his arm) or by an officer—he's not sure which.

What happened next is disputed. While there is dashcam footage of the chase and St. Clair's flight from the disabled truck, there is no video of the actual confrontation. St. Clair claims that after he was brought down, he immediately "gave up" and "wasn't resisting." Despite his surrender, St. Clair alleges that the officers swarmed him, jumped on him while he was face down on the ground, and repeatedly began to punch him in the face, strike him with batons, and kick him in the groin. He asserts that this beat

Case 8:21-cv-00168-WFJ-AAS   Document 135   Filed 09/02/25   Page 4 of 17 PageID 1145
USCA11 Case: 24-11302   Document: 25-1   Date Filed: 09/02/2025   Page: 4 of 15

4                  Opinion of the Court                24-11302

down continued even after he was placed in handcuffs and had screamed that the officers were killing him. In total, St. Clair estimates that the entire encounter lasted about twenty seconds, that he was placed in handcuffs within the first few seconds, and that he was struck "about 30 times" in total.

For their part, the officers admit to striking St. Clair. But they describe St. Clair's behavior as "noncompliant" and state that he was resisting arrest. Officer Peterman says that after releasing the canine, he ran over and knocked St. Clair to the ground. Officer Simmons arrived and delivered "two or three strikes" with his baton to St. Clair's side so he could gain control of his hands. Officer Strom held St. Clair's legs down. Officer Anthony struck St. Clair's right leg about four times. Officer Gulledge kicked St. Clair in the shoulder, while Officer Rex "delivered two closed fist strikes to St. Clair's face in an effort to distract him from his efforts to resist." Officer King also punched St. Clair in the head twice to secure "compliance."

Once St. Clair was in custody, the officers took him directly to the hospital. St. Clair received sutures for a dog bite on his left arm and a CAT scan for head trauma. The CAT scan came back negative, but the evaluation was "limited" because St. Clair couldn't keep still during the procedure. The attending physician also observed bruising on his face but did not note any swelling in his nose or bleeding in his mouth. At his deposition—taken after the hospital visit—St. Clair claimed to have received multiple injuries from his arrest that are not reflected in his hospital records.

Case 8:21-cv-00168-WFJ-AAS   Document 135   Filed 09/02/25   Page 5 of 17 PageID 1146
USCA11 Case: 24-11302   Document: 25   Date Filed: 09/02/2025   Page: 5 of 15

24-11302                Opinion of the Court                5

These included missing teeth, a broken nose, a concussion, swollen eyes, broken ribs, and a swollen testicle.

St. Clair pleaded nolo contendere in state court to five charges: grand theft of a motor vehicle, fleeing from law enforcement, burglary of a conveyance, resisting officers with violence, and aggravated assault of a law enforcement officer. He was sentenced to six years in prison.

## PROCEDURAL HISTORY

St. Clair sued the seven officers—and fourteen other employees of the Lakeland City Police Department—alleging violations of his constitutional rights under 42 U.S.C. section 1983. He claimed that each defendant (1) used excessive force against him, (2) failed to intervene to prevent the use of excessive force, and (3) was deliberately indifferent to his serious medical needs. The defendants moved for summary judgment, and the district court granted the motion for all claims except the excessive force claims against the seven officers.

The district court acknowledged that at summary judgment it needed to view the facts in the light most favorable to St. Clair. With that in mind, the district court credited St. Clair's version of events—in which the officers continued to beat him after he was handcuffed, lying face down on the ground, and had stopped resisting—over the conflicting accounts of the officers.

The district court then considered whether (under this version of events) the force used by the officers was excessive. In doing so it weighed: (1) the severity of St. Clair's crimes, (2) whether

Case 8:21-cv-00168-WFJ-AAS   Document 135   Filed 09/02/25   Page 6 of 17 PageID 1147
USCA11 Case: 24-11302   Document: 25   Date Filed: 09/02/2025   Page: 6 of 15

6                        Opinion of the Court                    24-11302

he posed an immediate threat to the safety of the officers or others, (3) whether he was actively resisting arrest or attempting to run away, (4) the need for force, (5) the relationship between the need for force and the amount used, and (6) the extent of St. Clair's injuries. The district court weighed the first factor in favor of the officers, while the second, third, fourth, and fifth factors favored St. Clair. It determined that the sixth factor was inconclusive. Based on this analysis, the district court concluded that a reasonable jury could find that the seven officers violated St. Clair's constitutional rights by using excessive force against him.

The district court then considered whether the officers' conduct violated clearly established law. It determined that any reasonable officer would have known at the time of St. Clair's arrest that a gratuitous use of force against a non-resisting suspect amounted to unconstitutional excessive force. Thus, the district court concluded, the officers were not entitled to qualified immunity for St. Clair's excessive force claims.

The officers timely filed this interlocutory appeal challenging the district court's denial of qualified immunity on St. Clair's excessive force claims.

## STANDARD OF REVIEW

We review de novo whether the officers are entitled to summary judgment based on qualified immunity. *See English v. City of Gainesville*, 75 F.4th 1151, 1155 (11th Cir. 2023). We also review de novo questions about our jurisdiction. *Id.*

USCA11 Case: 24-11302   Document: 25   Date Filed: 09/02/2025   Page: 7 of 15

24-11302                Opinion of the Court                7

## DISCUSSION

*Jurisdiction*

To begin, St. Clair argues that we lack jurisdiction over the officers' interlocutory appeal because it only raises issues of evidentiary sufficiency. We disagree.

When a party files an interlocutory appeal challenging the denial of qualified immunity at summary judgment, our jurisdiction "depends on the type of issues involved in the appeal." *Cottrell v. Caldwell*, 85 F.3d 1480, 1484 (11th Cir. 1996). We have interlocutory jurisdiction over legal issues, and over mixed issues of law and fact, but we lack interlocutory jurisdiction over pure issues of evidentiary sufficiency. *City of Gainesville*, 75 F.4th at 1155.

The officers assert that the district court made two legal errors: (1) that it failed to assess St. Clair's arrest from the perspective of an objectively reasonable officer, and (2) that it defined the clearly-established-right prong of the qualified immunity inquiry at too high a level of generality. Because these are legal issues, and not solely related to the sufficiency of evidence, we have jurisdiction. *See id.* at 1155-56.

*Qualified Immunity*

Qualified immunity protects police officers from liability for civil damages resulting from constitutional violations they commit while performing their discretionary duties—provided that the officer's conduct does not violate a plaintiff's clearly established constitutional rights. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th

Case 8:21-cv-00168-WFJ-AAS   Document 135   Filed 09/02/25   Page 8 of 17 PageID
USCA11 Case: 24-11302   Document: 29-1   Date Filed: 09/02/2025   Page: 8 of 15
1149

8                          Opinion of the Court                    24-11302

Cir. 2008).  In this case, there is no dispute that the seven officers were acting within their discretionary authority when they arrested St. Clair.  Thus, St. Clair had the burden to show (1) that—viewing the facts in his favor—the officers' conduct violated his constitutional rights, and (2) that those rights were clearly established at the time of his arrest.  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1267 (11th Cir. 2004).  The district court determined that St. Clair carried this burden.  We agree.

1. <u>The Officers' Conduct Violated St. Clair's Constitutional Right to be Free from Excessive Force</u>

The Fourth Amendment's protection from unreasonable seizures includes the right to be free from excessive force.  *See Baxter v. Santiago-Miranda*, 121 F.4th 873, 887 (11th Cir. 2024) (citing *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009)).  In excessive force cases, we evaluate the first qualified immunity inquiry—whether St. Clair's constitutional rights were violated—under an objective reasonableness standard.  *Baker v. City of Madison*, 67 F.4th 1268, 1279 (11th Cir. 2023).  This means that "we look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." *Baxter*, 121 F.4th at 887 (quoting *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009)).  In weighing reasonableness, we must be mindful "that police officers are often forced to make split-second judgments—in

Case 8:21-cv-00168-WFJ-AAS   Document 135   Filed 09/02/25   Page 9 of 17 PageID 1150
USCA11 Case: 24-11302   Document: 25   Date Filed: 09/02/2025   Page: 9 of 15

24-11302               Opinion of the Court                9

circumstances that are tense, uncertain, and rapidly evolving." *Graham v. Connor*, 490 U.S. 386, 397 (1989).

In considering the facts, the district court correctly credited St. Clair's version of events over the conflicting accounts of the officers. *See Stryker v. City of Homewood*, 978 F.3d 769, 776 (11th Cir. 2020); *Stephens v. DeGiovanni*, 852 F.3d 1298, 1315 (11th Cir. 2017). In St. Clair's recounting, the officers continued to beat him even after he had given up and stopped resisting arrest. St. Clair alleged that the officers struck him several times after he was face down on the ground, secured in handcuffs, and had screamed that they were killing him.

Accepting this version of the facts, we ask whether the officers' use of force was excessive. In doing so, we look to the same six factors as the district court. They are: (1) the severity of St. Clair's crimes, (2) whether he posed an immediate threat to the safety of the officers or others, (3) whether he was actively resisting arrest or attempting to run away, (4) the need for force, (5) the relationship between the need for force and the amount used, and (6) the extent of St. Clair's injuries. *See Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1353 (11th Cir. 2015). The officers' primary argument on appeal is that the district court failed to weigh these factors from the perspective of a reasonable officer.[1] We consider the factors de novo.

---

[1] The officers also argue that Officer Strom and Officer Peterman should be granted qualified immunity because "there is no evidence in the record that

Case 8:21-cv-00168-WFJ-AAS   Document 135   Filed 09/02/25   Page 10 of 17 PageID 1151
USCA11 Case: 24-11302    Document: 29    Date Filed: 09/02/2025    Page: 10 of 15

10                        Opinion of the Court                    24-11302

To start, we agree with the district court that the first excessive-force-inquiry factor—the severity of St. Clair's crimes—weighs in favor of the officers. St. Clair committed felony theft and went on to lead officers on a fourteen-minute car chase where he recklessly endangered the lives of several people. There is no doubt that St. Clair's crimes were serious and that a reasonable officer would have perceived them as so.

As to the second factor, we consider the situation at the time the force was applied. *See Acosta v. Miami-Dade Cnty.*, 97 F.4th 1233 (11th Cir. 2024) ("[Suspect] posed some threat to the officers early in the encounter . . . but he posed no 'immediate threat,' at the time the officers administered the tases and kicks that underlie [plaintiff's] constitutional claim."). Viewing the facts in St. Clair's favor, the officers continued to strike him for roughly fifteen seconds after he had given up, was face down on the ground in handcuffs, and had screamed that the officers were killing him. An objectively reasonable officer would not think that St. Clair posed an immediate danger once he had been secured this way. *Id.* at 1240-41. We agree with the district court that this factor weighs in St. Clair's favor.

---

[they] ever struck St. Clair." But there was evidence that they used force against St. Clair. Officer Strom swore that he used force on St. Clair's legs. And Officer Peterman averred he used force on St. Clair's arm and hand. The question is whether their force was constitutionally excessive under the *Graham* factors.

Case 8:21-cv-00168-WFJ-AAS   Document 135   Filed 09/02/25   Page 11 of 17 PageID
1152
USCA11 Case: 24-11302   Document: 29   Date Filed: 09/02/2025   Page: 11 of 15

24-11302                Opinion of the Court                        11

The same goes for the third, fourth, and fifth factors. While St. Clair did run after his vehicle was disabled, he was not resisting arrest or attempting to flee once the officers had him on the ground in handcuffs. *See id.* at 1240 ("[The suspect] wasn't actively resisting arrest or attempting to flee once he was taken to the ground and subdued."). But St. Clair claims that the officers continued to strike him after this point. Thus, the third factor supports St. Clair. The fourth and fifth factors typically travel together, and both also tilt toward St. Clair. *Id.* While the officers were justified in using some force to subdue St. Clair, the need for additional force abated once he stopped resisting, was on the ground, and had been placed in handcuffs. Without a need for force, there can be no relationship between a need for force and the amount of force used. *Id.*

As to the final factor, St. Clair testified that after being struck in the face roughly thirteen of his teeth fell out. He claims that his nose was broken, he was concussed, and that his eyes were swollen. He also testified that the officers broke his ribs, caused his testicles to swell, and that he now suffers persistent back pain. Many of these injuries are not reflected in the medical records from his admission to the hospital immediately after the incident. Neither are they immediately apparent from the dashcam video after the encounter. The hospital records note bruising on St. Clair's face but do not mention any swelling in his nose or bleeding in his mouth. St. Clair argues that some of these injuries—such as the teeth falling out and the back pain—occurred in the days after his encounter with the police, meaning they would not have appeared in the initial hospital evaluation. St. Clair maintains that these

Case 8:21-cv-00168-WFJ-AAS   Document 135   Filed 09/02/25   Page 12 of 17 PageID
1153
USCA11 Case: 24-11302    Document: 29    Date Filed: 09/02/2025    Page: 12 of 15

12                      Opinion of the Court                24-11302

injuries resulted from his arrest.  We must accept St. Clair's account of his injuries at this stage, and that account is severe. St. Clair's account is also not irreconcilable with either the hospital records or the dashcam footage.  Therefore, drawing all reasonable inferences in St. Clair's favor, we find that this factor tilts in his direction.

Ultimately, viewing the encounter under the totality of the circumstances, we reach the same conclusion as the district court: according to St. Clair's version of events, a reasonable jury could conclude that the officers violated his right to be free from excessive force. *See Stryker*, 978 F.3d at 775 ("We have consistently held that 'gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force.'" (citation omitted)).

The officers respond that, while St. Clair may have subjectively intended to surrender, his actions would not have made that clear to an objectively reasonable officer at the scene.  The officers assert that St. Clair has put forward no "objective evidence" that they "were aware of" his surrender.  And they argue that the district court failed to weigh the situation under the totality of the circumstances and instead only considered the "precise moment force was applied."

But the officers' argument misses the point.  To be sure, the events leading up to St. Clair's arrest were hectic, and the officers were certainly justified in their initial use of force to subdue St. Clair.  But once he was face down on the ground and in handcuffs, the need for force abated, and they were no longer justified

Case 8:21-cv-00168-WFJ-AAS   Document 135   Filed 09/02/25   Page 13 of 17 PageID 1154
USCA11 Case: 24-11302   Document: 29-1   Date Filed: 09/02/2025   Page: 13 of 15

24-11302                Opinion of the Court                13

in continuing to strike him.  *See Acosta*, 97 F.4th at 1240 ("[T]he fact that it took [initial force] to get [plaintiff] on the ground doesn't justify additional tases or kicks once he was there and had stopped resisting.")  Again, we must accept St. Clair's version of events as true, and he says that he "gave up" and "wasn't resisting" arrest when the police reached him.  He testified that the officers had him face down on the ground and in handcuffs within the first few seconds of the encounter, but that they continued to beat him for roughly fifteen seconds after that.  Even considering all that happened before St. Clair gave up, continuing to use force against him for fifteen seconds after he was secured was excessive.  *Cf. id.* at 1240–41 (denying qualified immunity to officers who continued to beat a suspect that had been brought to the ground and had stopped resisting, despite the suspect initially having led the officers on a chase and resisted arrest).

2. <u>It was Clearly Established that Officers Cannot Use Gratuitous Force Against a Non-Resisting Suspect at the Time of St. Clair's Arrest</u>

Turning to the second prong of the qualified immunity analysis, the district court concluded that the officers' conduct violated a clearly established right of which a reasonable officer would have known:  it is unconstitutional to use gratuitous force against a non-resisting suspect.  We agree.

A plaintiff can show that a right is clearly established through "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the

| 14 | Opinion of the Court | 24-11302 |

Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Prosper v. Martin*, 989 F.3d 1242, 1251 (11th Cir. 2021). Here, the district court relied on the second option, explaining that "[a]ny reasonable officer would have known in April 2019 that 'gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force.'" *See Ingram v. Kubik*, 30 F.4th 1241, 1252 (11th Cir. 2022); *Acosta*, 97 F.4th at 1241-42 (holding that it was clearly established in 2014 that a police officer cannot use force against a suspect who is not resisting).

The officers' argument to the contrary boils down to a renewed attack on the district court's conclusion that they used gratuitous force. They contend, again, that their actions were permissible when viewed from the perspective of an objectively reasonable officer under the totality of the circumstances. Thus, they argue that the broad principle prohibiting the use of gratuitous force is too broad to apply because the force they used was not gratuitous.

We disagree with the officers for the reasons we already explained. Viewing the facts in the light most favorable to St. Clair, the officers' use of force—after St. Clair was face down on the ground, handcuffed, and had stopped resisting—was gratuitous. We agree with the district court that it was clearly established at the time of the arrest that police officers cannot use gratuitous force against a non-resisting suspect. *See Acosta*, 97 F.4th at 1241-

24-11302     Opinion of the Court     15

42; *Stryker*, 978 F.3d at 776; *Saunders v. Duke*, 766 F.3d 1262, 1265 (11th Cir. 2014).

**AFFIRMED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

September 02, 2025

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 24-11302-DD
Case Style: Albert St. Clair, Jr. v. DeAngelo Anthony, et al
District Court Docket No: 8:21-cv-00168-WFJ-UAM

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing or rehearing en banc is governed by 11th Cir. R. 40-2. Please see FRAP 40 and the accompanying circuit rules for information concerning petitions for rehearing. Among other things, **a petition for rehearing must include a Certificate of Interested Persons**. See 11th Cir. R. 40-3.

Costs
Costs are taxed against Appellant(s) / Petitioner(s).

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

<u>Clerk's Office Phone Numbers</u>

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion